Good morning, Your Honors. My name is Mark Nerheim, and I represent Mr. Baba Sowe. And I'd like to reserve, if I can, two minutes for rebuttal. I know that's often hard to maintain. There were a couple of issues I just wanted to address in passing very quickly. The first one is the credibility issue in this case. Under Ninth Circuit law, if the BIA assumes without deciding that an applicant is credible, further corroboration is not required. And even where the BIA raises questions about an applicant's claim, but does not make an explicit negative credibility finding, the applicant's factual contentions are deemed true, and no further corroboration of facts is required. And those are from Lada v. INS and from Kataria v. INS. In this case, Mr. Sowe's factual testimony was that he was from Sierra Leone, and that his parents were members of the BIA. Let me interrupt you. In this case, did the BIA reach the question of credibility? No. In fact, they skipped it completely. Well, they mentioned it, saying, we do not have to address this issue for other reasons. And so they avoided it. And they did that at page three of the administrative record. They said in the third sentence, we need not reach the issue whether the adverse credibility determination was correct. And they did that because of changed country conditions and because under the humanitarian claim, they did not find the acts sufficiently compelling. That's correct, Your Honors. So because of that, I want to discuss just briefly a little bit about the important salient facts. They were that his parents were killed in front of him by RUF rebels, that the rebels came to his family home because the RUF said and told them that his family were Muslim Maracas, and that his family supported the Sierra Leone government and not the rebels. The rebels cut off the hand of one of Mr. Sowe's brothers, Haji, in front of Mr. Sowe. Mr. Sowe testified that the RUF used a machete when his brother Haji refused to let go of his father while trying to console his father at the time that his mother and father had both been shot. In addition, he testified that his sister was kidnapped and raped by the RUF rebels, and he further testified that he was taken prisoner by the RUF rebels on at least three occasions and that he was also beaten by them. Now, I think under- Counsel, what did the board hold regarding the humanitarian asylum? They said that we do not find that the respondent claims to have suffered that of being detained and beaten by the RUF to be sufficiently compelling to support a grant of asylum in the absence of a well-founded fair persecution. And then they go on to say that he's not-I'm staring at this right now. I think generally they don't specifically dress in any kind of detail the humanitarian asylum issues. Other than the citation to Matter of Chen. That's correct, Your Honor. But I think under the Matter of Chen criteria, he still would have established that in Matter of Chen. In his particular case, I mean, he witnessed his parents being murdered in front of him. He witnessed his brother's hand being cut off. And Matter of Chen didn't have those elements in it. And I think that he met that kind of standard clearly, and I think it was an abuse of discretion. That's reviewed, I believe, under an abuse of discretion standard. That was actually going to be my question to you. When the BIA holds that the harm that the respondent testified to is not equivalent to the persecution in Matter of Chen, which under our law case is the standard they're supposed to apply, when they say that standard hasn't been met, do we review that for abuse of discretion or substantial evidence, or what do we do? I think that that review is based upon abuse of discretion. And there are several cases where they found compelling cases for past persecution. For example, in Law v. INS, in that case, the person had been detained three times, beaten and tortured and urine forced into his mouth, and he was cut with knives and burned with cigarettes, forced to eat meat, and his house was set ablaze. If that's a standard that's sufficient, it's hard to imagine that watching your parents getting killed and your brother's hand being cut off as he's trying to console your father before his father dies, while his mother is dying, and his sister is raped, it's hard to imagine that that doesn't establish the form of atrocious persecution of prior acts against him. With respect to the other claim, what is the effect of our decision in CILA? Your Honor, CILA, it's interesting. CILA actually was not an asylum case because there was a one-year application rule in that, so the standard that they were reaching was looking at the eligibility for withholding of removal, which is a much higher standard. And I think if you look at that, you can distinguish the case in part because CILA was not a straightforward asylum claim, and it didn't have the component element of the humanitarian asylum claims in it. Well, no, the humanitarian claim is a separate claim, but in terms of the existence of change country conditions, I can't say that, but you did in Sierra Leone. The problem is that in Sierra Leone, the change country conditions, it's really a mixed bag when you look at it. At the time that this case was presented, we have, I think, several pages describing all of the other information that was contained in the Department of State reports, and they're outlined in our brief at pages 25 to 29, which describes problems with the SLP, the Sierra Leone police, how they were underfunded, they were corrupt, and there were still thousands of RUF rebels that hadn't been prosecuted, that even though there had been some changes, there was still arbitrary detention, there were still groups or areas where RUF rebels were still holding people, and we describe that in there that there wasn't effective control yet of the government at the time. And I think the problem is that the burden to show change country conditions is upon the government to do that, and they just, I don't think they met their burden to prove that, that there was significant change country conditions to guarantee Mr. So's safety if he were to return to Sierra Leone, especially under the circumstances where there's a potential that he could still identify RUF, former RUF members that killed his parents. Are you still discussing the humanitarian aspect? No, I was going to the issue of change country conditions. Because under the humanitarian aspect you have to show it's either the government doing it or willfully being blind to what's going on. I think that provision, I think, applies to the Convention Against Torture, which I think might be a separate issue. I think the standard for this, I think the government analysis is flawed because they say that the humanitarian asylum requires evidence of a future threat, and that isn't true, that's in the government brief at 35. The government also suggests that Mr. So is required to present evidence that he's suffering from continual or continuous psychological harm or some other kind of harm, and that is also not the law. In fact, under law, as amended, there's a specific provision that says that ongoing disability as a result of the persecution, meaning the atrocious form of persecution under the humanitarian analysis, is not required. Assuming that we agreed with you on the humanitarian, the Chen defense, can we make those findings or do we have to send it back under Ventura? That question, I would like to say that I would hope that you could, but I think maybe under Ventura you're going to have to remand it back to the agency for determination. And that explains a little bit why I discussed the credibility issues, to show you that even the initial immigration judge's adverse credibility issue, that there was still a reason to remand it, that remanding it wouldn't be futile, that he would have an opportunity to make his case on these issues. Thank you. You're honorized. We're running out of time. We will give you a little bit of rebuttal time. Thank you very much. Because we asked you some questions. Thank you. Mr. Garza. Good morning. May it please the court. First, the government would like to make clear that no one would dispute that during the Civil War in Sierra Leone, many unfortunate and tragic events occurred in that unfortunate country. However, in this case, as the State Department reports indicate, which reports were reviewed by the Board of Immigration Appeals, the Board of Immigration Appeals, based on those reports of what has happened since Mr. So left the country in 2001, the Civil War, the 11-year Civil War ended in 2002. There has been reconciliation. The U.N. peacekeeping forces have been there. There has been a return to normalcy. And while not perfect, the conditions in that country create a situation where it is safe for Mr. So to return and that he does not have a well-founded fear of future persecution. Counsel, I'd like to ask you some questions about the request for humanitarian relief. And I'm sorry this is going to be kind of a long question because there are a couple of premises. We have cases that say that when the BIA avoids a credibility determination on purpose, as they did here, that we assume arguendo that the testimony established past persecution. And the regulation on humanitarian grants makes the standard one having to do with the severity of the past persecution of the applicant and his or her family. And that it was basically that it was so awful that the person deserves humanitarian relief. It doesn't have all those other requirements. If we are compelled by our precedent to believe the testimony here, I'm concerned that the agency's decision was incomplete in its reasoning. And I'm looking at page three of the administrative record. What they are looking at is his being detained and beaten. And they say that doesn't rise to the level of matter of Chen. And that's probably right as far as it goes, but the regulation requires them to look at what happened to the person's family. And from the face of the decision, they didn't do that. Why isn't that a mistake that requires them at least to go back and look at it again? In discussing its reasons, in exercising the Attorney General's authority to exercise his or her discretion in granting humanitarian relief, the standard of review clearly is abuse of discretion here. And the board does not have to do that. Error of law is also an abuse of discretion. We know that from Coon. But the board does not have to provide an exegesis in giving all of its reasons. In sum, they indicated the things that happened to him. Granted, what happened to the other members of his family were not mentioned by the board in his decision when talking about humanitarian grant. But it seems to me that they've affirmatively said that all they looked at was what happened to him. We do not find that the harm that the respondent claims to have suffered, that of being detained and beaten, to be sufficient. I'm paraphrasing at the end of that sentence. But they clearly, to me, reading that, they've looked at what happened to him. They have not considered or they haven't said they've considered what happened to his family, but the regulation seems to require that they do so. Granted, the board did not explicitly address what happened to his family members. But that is part of the record that was before the board on appeal. Definitely. That's why they had to look at it. I mean, that's exactly my problem, is I'm concerned that they used the wrong legal standard in examining that claim. The government would not concede that because they did not explicitly mention the harm that occurred to the family, that they did not look at it, that they did not analyze it. That they may have misspoken in providing the reasoning and just focus on what happened to him individually. However, we would not concede that that meant that they committed error in not looking at the entire record. And in granting the, in not granting the humanitarian relief, we believe that the board was acting within its authority and provided reasoning that's sufficient to show that what happened to him was not atrocious, him and his family was not atrocious enough to rise to the level of matter of chin. What finding in the BIA's report says that? As I read the BIA's terse comments, it seemed to say we're not deciding credibility, we're looking at the facts that were presented, we look at the changed conditions, and therefore he has failed to demonstrate that he's entitled to either asylum or withholding. I didn't see any findings as to whether what this man says he experienced qualified him for humanitarian aid or didn't qualify him for that. Granted, Judge Alicorn, that's one of the reasons that alternatively in the government's brief, the government indicated that if it was necessary to remand, and we agree that under Ventura the matter would have to be remanded, that the, on the issue of credibility, that the board should get an opportunity to have a look at the evidence and see if, based on his credible testimony, whether or not he would meet those standards. At bottom, we feel that there's no question that Mr. So suffered. However, what the board was saying was that based on the changing country conditions, and I think the record clearly indicates that things are much better in Sierra Leone, although not perfect, that petitioner does no, no longer has a fee of persecution upon return to Sierra Leone. He does not have a fee of persecution. But if he's entitled to the humanitarian defense, we don't look at that, do we? That is correct, Judge Alicorn. I don't believe there are. Thank you so much. Mr. Nurheim, we used up your time, but you may have one minute for rebuttal. Sure. Thank you, Your Honor. I'll move quickly here. The standard of past persecution to qualify for humanitarian asylum, as the court has recognized, it's this, quote, so awful standard. It doesn't have the other component requirements that are in other parts of immigration law, which we've established past persecution that has been so atrocious. The abuse of discretion standard that applies to review, and for some reason, I don't know why I didn't put this in the brief, but it's a standard analysis that includes failure to consider all relevant factors. And when you realize what the relevant factors are in looking at a humanitarian asylum case or claim, that must include that, and you can't just simply rely on a guess as to what the BIA or the agency looked at when they made their decision. Finally, I want to address changed country conditions just briefly. The government is obligated to produce evidence on an individualized basis that rebutts particular applicants' specific grounds. In this case under Popova and several other cases we've cited in brief, I don't think they've made that standard on an individualized basis either with respect to changed country conditions. Thank you very much, Your Honors. Thank you very much, counsel. The case just argued is submitted.
judges: Alarcon, Graber, Rawlinson